NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
In re:

LEHMAN BROTHERS HOLDINGS, INC.,    Chapter 11
                                   Case No. 08-13555 (JMP)

                    Debtor.
-------------------------------------------------------X
EVERGREEN SOLAR, INC.

                    Plaintiff,

                    -v-

BARCLAYS PLC, BARCLAYS CAPITAL    Chapter 11
INC., LEHMAN BROTHERS HOLDINGS    Adv. Proc. No. 08-01633 (JMP)
INC., and LEHMAN BROTHERS INC.

                    Defendants.
-------------------------------------------------------X

## MEMORANDUM DECISION GRANTING MOTIONS TO DISMISS VERIFIED AMENDED COMPLAINT

GOODWIN PROCTER LLP
Attorneys for Evergreen Solar
The New York Times Building
620 Eighth Avenue
New York, NY 10019

    Emanuel C. Grillo, Esq.

CLEARY, GOTTLIEB, STEEN & HAMILTON
Attorneys for Barclays Capital, Inc.
One Liberty Plaza
New York, NY 10006

    Boaz S. Morag, Esq.

WEIL, GOTSHAL & MANGES LLP
Attorneys for Lehman Brothers Holdings, Inc.
767 Fifth Avenue
New York, NY 10153

    Scarlett Collings, Esq.

HUGHES HUBBARD & REED LLP
Attorneys for James W. Giddens, Trustee for the SIPA Liquidation of
Lehman Brothers, Inc.
One Battery Park Plaza
New York, NY 10004

    Sara Loomis Cave, Esq.

**JAMES M. PECK**
**United States Bankruptcy Judge**

*Introduction*

In this adversary proceeding, plaintiff Evergreen Solar, Inc. ("Evergreen"), a domestic manufacturer of solar power products[1] and a former investment-banking client of Lehman Brothers Holdings, Inc. and its affiliates (collectively, "Lehman"), seeks to recover possession and control of more than twelve thousand shares of its own common stock that it alleges improperly were transferred to Barclays Capital, Inc. ("Barclays") as part of the expedited sale of assets that took place during the days immediately following commencement of Lehman's global insolvency cases in September 2008. Evergreen is one of many corporate finance victims of Lehman's failure, a client caught in the complexity of the international capital markets that, as detailed in this Memorandum Decision, has claims for which there are no remedies.

---

[1] Evergreen is headquartered in Massachusetts. At the time of hearing on the Motions to Dismiss (as defined below), Evergreen operated a manufacturing facility for these products in Devens, Massachusetts. The Court is aware of a recent announcement by Evergreen indicating that it is closing this facility and shifting production to China.

2

On October 20, 2008, Evergreen commenced this action by filing its complaint (the "Complaint") against Barclays PLC, Barclays, Lehman Brothers Holdings, Inc. ("LBHI"), and Lehman Brothers, Inc. ("LBI," and together with Barclays and LBHI, the "Defendants"). The Complaint included a request for preliminary injunction seeking (i) the immediate return of any shares of Evergreen common stock (and any related proceeds) in the possession of any Defendant and (ii) an injunction preventing Defendants from transferring any shares of Evergreen common stock to any third party. On November 5, 2008, the Court heard and denied the request for preliminary injunction.[2] *See* Chang Decl., Ex. A.

On December 12, 2008, Evergreen filed an amended complaint (the "Amended Complaint"), and, on January 13, 2009, Evergreen voluntarily dismissed its claims against Barclays PLC. In the six-count Amended Complaint, Evergreen seeks to recover and impose a constructive trust on certain shares of Evergreen common stock that may be in the possession of any of the Defendants. Although Evergreen was a domestic client of Lehman, under the applicable financing arrangements, it had loaned the shares at issue to Lehman Brothers International (Europe) ("LBIE") as part of a share lending transaction. In its Amended Complaint, Evergreen has brought counts for declaratory judgment (against all Defendants), breach of contract (against LBHI and LBI[3]), conversion (against

---

[2] Evergreen claimed that its ability to obtain needed future financing for its operations was impaired because it no longer had control of the shares that were loaned to LBIE and transferred to Barclays. The Court found this to be a speculative claim and did not find any irreparable harm. Given the passage of time since the original submission of this matter, the Court lacks knowledge as to whether the sale of these shares to Barclays has had any impact on Evergreen's ability to obtain financing or whether there have been any subsequent changes to Evergreen's capital structure that might reduce or eliminate any adverse effect resulting from the loss of control of these shares.

[3] Evergreen refers to LBHI and LBI collectively as the "Lehman Defendants." Due to their very different roles in the transaction at issue, however, the Court will refer to them separately.

3

all Defendants), permanent injunctive relief (against Barclays), relief from stay and constructive trust (against all Defendants).

All Defendants filed motions to dismiss the Amended Compliant. Before the Court are the Motion to Dismiss of Barclays, LBHI's Partial Motion to Dismiss and Partial Joinder in the Barclays' Motion to Dismiss and the Motion to Dismiss brought by James W. Giddens as Trustee (the "SIPA Trustee") for LBI (each, a "Motion to Dismiss" and collectively, the "Motions to Dismiss"). Following briefing of the Motions to Dismiss, the parties presented their arguments to the Court at a hearing held on April 22, 2009.

Upon the conclusion of that hearing, the Court reserved decision on the Motions to Dismiss and has withheld its decision for what has turned out to be an extended period of time due to the potential impact on the Motions to Dismiss of protracted proceedings in separate litigation before the Court. These other proceedings sought relief from the Sale Order (defined below) under Rule 60(b) of the Federal Rules of Civil Procedure (the "60(b) Litigation"). The 60(b) Litigation brought by LBHI and the SIPA Trustee challenged the amount of consideration received for assets transferred to Barclays under the Repo (defined below) and the integrity of various aspects of the sale to Barclays. These challenges related in part to the adequacy of disclosure made to the Court regarding the Repo that is subject of Evergreen's Amended Complaint. Now that the 60(b) Litigation has been resolved,[4] the issues presented in the Motions to Dismiss are ripe for decision.

For the reasons that follow, each of the Motions to Dismiss will be granted.

---

[4] The Court issued its Opinion in the 60(b) Litigation on February 22, 2011.

4

*Rule 12(b)(6) Standard*

Federal Rule of Bankruptcy Procedure 7012(b), which incorporates Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), permits a bankruptcy court to dismiss an adversary proceeding if a plaintiff's complaint fails to state a claim upon which relief can be granted. In reviewing a motion to dismiss under Rule 12(b)(6), the Court must accept the factual allegations of the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *E.E.O.C. v. Staten Island Sav. Bank*, 207 F.3d 144, 148 (2d Cir. 2000). To survive a challenge to the adequacy of a complaint under Rule 12(b)(6), the factual allegations in a complaint must be supported by more than mere conclusory statements. *Twombly*, 550 U.S. at 555. The allegations must be sufficient "to raise a right to relief above the speculative level," and provide more than a "formulaic recitation of the elements of a cause of action." *Id.*

A court may dismiss a complaint unless a plaintiff pleads "enough facts to state a claim to relief that is plausible on its face." *Twombley*, 550 U.S. at 949. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 129 S. Ct. at 1950. Therefore, "[t]he appropriate inquiry is not whether a plaintiff is likely to prevail, but whether he is entitled to offer evidence to support his claims." *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005).

*Factual Background*

Evergreen, LBI and LBIE are parties to that certain Share Lending Agreement (the "SLA"), dated as of June 26, 2008, pursuant to which LBIE, as borrower, acting through LBI, as agent, borrowed 30,856,538 shares of Evergreen common stock

5

(collectively, the "Loaned Shares") from Evergreen, as Lender. Am. Compl. at 2, ¶ 15; Am. Compl. Ex. A. LBHI guaranteed LBIE's obligations under the SLA pursuant to that certain guaranty dated June 26, 2008 (the "Guaranty"). Am. Compl. at 2; Am. Compl. Ex. A. On June 26, 2008, LBI, acting as sole book-running manager, conducted a public offering, selling 18,184,511 of the Loaned Shares to public investors. Am. Compl. ¶ 15. The remaining 12,672,027 Loaned Shares remained in the hands of LBI, as agent. Am. Compl. ¶ 15. Under Section 7 of the SLA, LBIE had

> all of the incidents of ownership in respect of any … Loaned Shares until such Loaned Shares [were] required to be delivered to [Evergreen] in accordance with the terms of this Agreement, including the right to transfer the Loaned Shares to others.

Am. Compl. Ex. A § 7.

LBIE suffered a credit downgrade on September 15, 2008. Am. Compl. ¶ 19. Accordingly, Evergreen, via a letter to LBIE, demanded that, in accordance with Section 4 of the SLA, LBIE transfer collateral to Evergreen with a market value equivalent to the market value of all outstanding Loaned Shares. Am. Compl. ¶ 19; Am. Compl. Ex. A § 4; Am. Compl. Ex. C.

On that same day, LBIE was placed into administration proceedings in the United Kingdom, thereby triggering an event of default under Section 10(a)(iii)[5] of the SLA. Am. Compl. ¶ 19; Am. Compl. Ex. A § 10(a)(iii). Commencing on September 15, 2008 and periodically thereafter, LBHI and certain of its subsidiaries each filed a voluntary

---

[5] Section 10(a)(iii) of the SLA provides for immediate termination of the SLA upon:
  the filing by or on behalf of [LBIE] of a voluntary petition or an answer seeking reorganization, arrangement, readjustment of its debts or for any other relief under any bankruptcy, reorganization, receivership, compromise, arrangement, insolvency, readjustment of debt, dissolution, moratorium, delinquency, winding-up or liquidation or similar act or law, of any state, federal or other applicable foreign jurisdictions … .
Am. Compl. Ex. A § 10(a)(iii).

6

petition under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").[6] Case No. 08-13555, ECF No. 1. On September 17, 2008, Evergreen sent a second letter – one addressed to LBIE and LBHI – providing notice of the event of default under Section 10(a)(iii) of the SLA and demanding return of the Loaned Shares no later than September 22, 2008. Am. Compl. ¶ 22; Am. Compl. Ex. D.

On September 18, 2008, LBI transferred 12,304,187 shares of Evergreen common stock, as well as a portfolio of other securities, to Barclays under the terms of a repurchase agreement (the "Repo"). Am. Compl. ¶ 25; Am. Compl. Ex. F. At the same time, LBI, LBHI and Barclays were negotiating a transaction (the "Sale Transaction") under which Barclays would acquire Lehman's North American broker-dealer and investment banking operations (the "Broker-Dealer Business"). Am. Compl. ¶¶ 26, 27. The Sale Transaction was memorialized in an asset purchase agreement, dated as of September 16, 2008 (the "APA"),[7] and was later clarified, amended and supplemented by a clarification letter dated as of September 20, 2008 (the "Clarification Letter"[8]). Am. Compl. ¶¶ 25, 26, 27; Chung Decl. Exs. B, J.[9] The Clarification Letter specifically provided that the rights and obligations of the parties under the Repo (including LBI's right to repurchase the transferred securities) would terminate, and all securities held by

---

[6] In evaluating a motion to dismiss, a court may consider matters that may be taken on judicial notice, including "prior pleadings, orders, judgments, and other items appearing in the Court's records of prior litigation that is closely related to the case sub judice … ." *Chase v. Chase (In re Chase)*, 392 B.R. 72, 80 (Bankr. S.D.N.Y. 2008) (citations omitted).

[7] The APA defined those assets that Barclays agreed to purchase thereunder as "Purchased Assets."

[8] The Clarification Letter was not formally approved, but the Court has determined that it is enforceable nonetheless.

[9] In ruling on a motion to dismiss, the Court may consider documents omitted from the plaintiff's complaint but attached by a defendant to its motion to dismiss. *See, e.g., Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d. Cir. 1991) (district court may consider exhibits omitted from plaintiff's complaint but attached as exhibits to defendant's motion papers because "there was undisputed notice to plaintiffs of their content and they were integral to plaintiff's claim").

7

Barclays under the Repo would be deemed part of the Purchased Assets. Chung Decl. Ex. B ¶ 13.

On September 19, 2008, as a means to facilitate the Sale Transaction and as part of a coordinated strategy to promptly sell the Broker-Dealer Business to Barclays, the United States District Court for the Southern District of New York entered an Order Commencing Liquidation of LBI that appointed the SIPA Trustee and referred the liquidation proceeding to this Court. Adv. Proc. No. 08-01420, ECF No. 1; *see also* Am. Compl. ¶ 24. Later that same day, a hearing (the "Sale Hearing") took place regarding the Sale Transaction that was held jointly in both the LBHI chapter 11 case the LBI liquidation. The Sale Hearing extended into the early morning hours of September 20.

At the conclusion of the Sale Hearing, the Court approved the Sale Transaction and entered an order dated September 20, 2008 (the "Sale Order").[10] Am. Compl. ¶ 28; Chung Decl. Exs. C, D. In the Sale Order, the Court found that Barclays was a "good faith Purchaser" and had "proceeded in good faith in all respects in connection with" the Sale Transaction. Chung Decl. Ex. C ¶ K. The Sale Order also provides that the transfer of the Purchased Assets "will be a legal, valid and effective transfer of the Purchased Assets … free and clear of all Liens, claims … or interests of any kind or nature whatsoever … ." Chung Decl. Ex. C ¶ N.

---

[10] As the parties are aware, the 60(b) Litigation encompassed a lengthy trial that commenced in April 2010 and concluded in October 2010 that, among other things, challenged the right of Barclays to rely on (i) the Sale Order due to alleged failures to disclose material information at the Sale Hearing relating to the purchase of the Broker-Dealer Business, and (ii) the Clarification Letter, due to the fact that the parties never presented it to the Court for approval. Given the potential impact of these issues on the Motions to Dismiss, the Court deferred resolving these motions until after deciding the issues raised at trial. *See Opinion on Motions Seeking Modification of the Sale Order Pursuant to Rule 60(b), the Trustee's Motion for Relief Under the SIPA Sale Order, Barclays' Cross-Motion to Enforce the Sale Orders and Adjudication of Related Adversary Proceedings.* Case No. 08-13555, ECF No. 14612.

8

On September 29, 2008, Markit Group Limited filed a motion under Federal Rules of Bankruptcy Procedure 9023 and 9024 seeking clarification and, to the extent necessary, modification of the Sale Order in connection with a certain Data Services Agreement (the "Markit Group Motion").[11]  Case No. 08-13555, ECF No. 433. Commencing on October 17, 2008, Bay Harbour Management L.C., Bay Harbour Master Ltd., Trophy Hunter Investments, Ltd., BHCO Master, Ltd., MSS Distressed & Opportunities 2, and Institutional Benchmarks prosecuted an appeal (the "Bay Harbour Appeal") of the Sale Order in the United States District Court for the Southern District of New York (the "District Court").  *See* District Court Case Nos. 08-cv-08869, 08-cv-08914.  On March 13, 2009, the District Court issued its Opinion & Order affirming the Sale Order.  District Court Case No. 08-cv-08869, ECF No. 18; District Court Case No. 08-cv-08914, ECF No. 19.

On October 8, 2008, Barclays filed a Schedule 13G with the United States Securities and Exchange Commission, indicating ownership of 12,191,478 shares of Evergreen common stock.[12]  Am. Compl. ¶ 29; Am. Compl. Ex. E.  It was upon the filing of this Schedule 13G that Evergreen first learned of the transfer of Evergreen shares to Barclays.  Evergreen filed the Complaint on October 20, 2008 and, on December 12, 2008, Evergreen filed the Amended Complaint seeking to regain control of these shares of common stock under a variety of legal theories.

---

[11] The Markit Group Motion was resolved by stipulation on October 30, 2008.  Case No. 08-13555, ECF No. 1293.

[12] On November 17, 2008, Barclays amended its Schedule 13G to reflect ownership of 12,304,187 shares of Evergreen common stock.  Am. Compl. ¶ 29, n.4; Am. Compl. Ex. F.

*Discussion*

*Declaratory Judgment (Count I), Conversion (Count III)*

Evergreen asserts that LBIE's failure to post collateral and the event of default caused by commencement of administration proceedings for LBIE automatically terminated the SLA and that the "incidents" of ownership then held by LBIE were thereby automatically terminated. Am. Compl. ¶ 20; Br. Opp'n at 4. Evergreen consequently contends that LBI did not hold any legal interest in the shares of Evergreen common stock that it transferred to Barclays under the Repo and that such transfer was in violation of the SLA. Am. Compl. at 4, ¶ 30; Br. Opp'n at 7. Accordingly, Evergreen seeks a declaratory judgment that title to the Loaned Shares reverted to Evergreen upon the described events of default and that any purported transfer of any Evergreen shares to Barclays therefore is null and void. Am. Compl. ¶ 40.

Evergreen further alleges that the failure to return the Loaned Shares upon receipt of the September 17, 2008 demand letter constitutes intentional conversion on the part of LBI and LBHI. Am. Compl. ¶¶ 48, 49. Evergreen asserts that Barclays "knew or should have known" through the exercise of reasonable diligence that the Loaned Shares were not the property of LBI and, therefore, Barclays' acceptance of shares of Evergreen common stock from LBI and refusal to return them constitutes intentional conversion on the part of Barclays. Am. Compl. ¶¶ 50, 51. Evergreen seeks the return of the Loaned Shares and the imposition of a constructive trust over the shares until they are returned. Am. Compl. ¶¶ 53, 66.

10

In support of dismissal, Barclays[13] argues that these claims are barred by virtue of the Sale Order and that the SLA does not support the position of Evergreen.  Barclays Br. Supp. at 2.  The Court concurs with Barclays, and finds that Counts I, III and VI of the Amended Complaint fail to state a claim upon which relief may be granted.

*Claim Barred by Sale Order*

In the Sale Order, the Court specifically found that Barclays was a good faith purchaser, had purchased the Purchased Assets free and clear of all liens, and was "entitled to all of the benefits and protections afforded by Bankruptcy Code section 363(m)."  Chung Decl. Ex. C ¶¶ K, N, 18.  Section 363(m) affords purchasers of a debtor's assets an "assurance of finality" with respect to "who has rights to estate property."  *In re Gucci*, 126 F.3d 380, 387 (2d Cir. 1997); *see also United States v. Salerno*, 932 F.2d 117, 123 (2d Cir. 1991) (conclusion to uphold terms of sale under Section 363(m) "furthers the policy of finality in bankruptcy sales").  Additionally, Paragraph 7 of the Sale Order enjoins the assertion of any claims against Barclays relating to or arising out of its purchase of the Purchased Assets and provides that:

> [e]xcept as expressly permitted by the [APA] or by this Sale Order, all persons and entities … holding Interests or Claims of any kind or nature whatsoever against or in [Lehman] or [Lehman's] interests in the Purchased Assets … arising under or out of, in connection with, or in any way relating to, [Lehman], the Purchased Assets, the operation of [Lehman's] businesses before the Closing Date or the transfer of [Lehman's] interests in the Purchased Assets to [Barclays], shall be and hereby are forever barred, estopped and permanently enjoined from asserting, prosecuting or otherwise pursuing against [Barclays] … such persons' or entities' Interests or Claims.

Chung Decl. Ex. C ¶ 7.

---

[13] Both LBI and LBHI joined in Barclays' Motion to Dismiss with respect to Counts I, III and VI of the Amended Complaint.  LBI Mot. Dismiss at 4; LBHI Mot. Dismiss ¶¶ 8, 9, 10.

11

Evergreen contends that the Sale Order does not prevent it from pursuing claims against Barclays because it never received notice that any Evergreen shares were going to be sold to Barclays, "[n]or were there sufficient, publicly disclosed facts to put [it] on notice" that LBI would transfer shares of Evergreen common stock to Barclays. Br. Opp'n at 7-8. Evergreen thus complains of a violation of its due process rights. Br. Opp'n at 9.

It is true, as Evergreen points out, that "[n]otice is the cornerstone underpinning Bankruptcy Code procedure." *Western Auto Supply Co. v. Savage Arms (In re Savage Indus.)*, 43 F.3d 714, 720 (1st Cir. 1994). However, "[t]he words 'after notice and a hearing'" under Section 102(1) of the Bankruptcy Code "mean such notice and such opportunity for a hearing 'as is appropriate in the particular circumstances.'" *Dinova v. Harris (In re Dinova)*, 212 B.R. 437, 442 (B.A.P. 2d Cir. 1997). The particular circumstance that prevailed at the time of the Sale Hearing was a profound emergency of historic proportions, and the Loaned Shares at issue were held as part of a book of financial assets that was thought to be quickly losing value. *See* Case No. 08-13555, ECF No. 6715 (9/19/08 Tr.) at 244:17-24 (Miller) (describing the status of the LBHI estate as an ice cube that's "already half melted," and stating that it is "imperative" that the sale be approved "because if the alternative happens, there will be very little to distribute to creditors, if anything"). Accordingly, as the Court observed at the Sale Hearing, "for due process purposes we are all here with, perhaps cobbled together notice, but it's notice." Chung Decl. Ex. H (9/19/08 Tr.) at 84:20-21 (Peck). Moreover, in the Sale Order, the Court found that notice of the sale was "due, proper, timely, adequate and sufficient" and

12

that interested parties had been given "[a] reasonable opportunity to object and to be heard with respect to the proposed [s]ale." Chung Decl. Ex. C ¶¶ C, F.

It is undisputed that Evergreen had notice of a potential claim against Barclays no later than October 8, 2008, during the pendency of the Bay Harbour Appeal and prior to the resolution of the Markit Group Motion. As of that date, Evergreen had the opportunity to appeal the Sale Order but did not do so. Due to the filing of the Markit Group Motion, the time to appeal the Sale Order for all parties expired on November 10, 2008. *See* Fed. R. Bankr. P. 8002(b) (providing that, where any party makes a timely motion under, *inter alia*, Fed. R. Bankr. P. 9023 or 9024, "the time for appeal for all parties runs from the entry of the order disposing of the last such motion outstanding").

Indeed, Evergreen admits that it "apparently could have, as a technical matter, filed a notice of appeal." Br. Opp'n at 12. Evergreen submits, however, that because it did not appear at the Sale Hearing to raise its claims to the Loaned Shares prior to the entry of the Sale Order, no appellate court would have considered its claims. Br. Opp'n at 12. Given the emphasis placed by Evergreen on inadequate notice, this argument is without merit. A legitimate claim based on inadequate notice would be grounds for an appeal, even when the party has not appeared below. *See, e.g., Dinova* 212 B.R. at 440, 443-44 (B.A.P. 2d Cir. 1997) (upholding appeal of dismissal of chapter 7 case where debtor had failed to appear based on inadequate notice).

Evergreen may not circumvent the holding in the Sale Order that notice was adequate by means of an impermissible collateral attack. The Court is mindful of the well-established public policy of upholding the finality of sale orders issued by bankruptcy courts to encourage potential acquirers to make bids on assets in bankruptcy.

13

*See, e.g., In re Chung King, Inc.*, 753 F.2d 547, 549-50 (7th Cir. 1985) (finality policy necessary to encourage bidders); *In re Lawrence*, 293 F.3d 615, 621 (2d Cir. 2002) (citations omitted) (finality policy "particularly important" in the context of a bankruptcy sale order).

Because the finality of sales in bankruptcy is an important policy incentive that encourages third parties to acquire assets from debtor entities, the Court will not allow a party such as Evergreen to obtain what amounts to reconsideration of the holding of adequate notice in the Sale Order by means of this adversary proceeding, particularly where notice was appropriate in the particular circumstances and where Evergreen did not avail itself of the opportunity to appeal the Sale Order.

*Conversion Claim (Count III) Unsupported by SLA*

Even if Evergreen could make a colorable due process claim that would allow it to bring this action, the SLA offers no support for its claims of conversion. In order to prevail on a conversion claim, the plaintiff must show "legal ownership or an immediate superior right of possession to specifically identifiable property … ." *N.Y. Medscan, LLC v. JC-Duggan Inc.*, 837 N.Y.S.2d 80, 81 (1st Dep't 2007) (citation omitted). The SLA does not provide that title to the Loaned Shares passes to Evergreen upon an event of default. Instead, the SLA gives great flexibility to LBIE, as borrower, and confirms that LBIE has "all of the incidents of ownership" and the ability to transfer the Loaned Shares at will. Am. Compl. Ex. A § 7. It further provides that, upon termination due to the occurrence of an event of default, the Loaned Shares "shall be delivered by Borrower to Lender … no later than the third Business Day following the termination date." Am. Compl. Ex. A § 5(c). The definition of Loaned Shares, however, provides that in respect

of "any … share of [Evergreen common stock] initially transferred to Borrower by Lender and subsequently transferred by Borrower to another transferee, 'Loaned Shares' means an equivalent number of shares of identical [Evergreen common stock]." Am. Compl. Ex. A § 1. Thus, Evergreen, under the express terms of its contract with LBIE, has no right of possession to specifically identified property.

Evergreen itself publicly disclosed the status of the Loaned Shares in its September 2008 Form 8-K, which notes that it entered into a common stock lending agreement with LBIE pursuant to which LBIE sold the Evergreen shares that are the subject of this agreement into the market at prevailing market prices or at negotiated prices. Chung Decl. Ex. G (Sept. 2008 Form 8-K) at 3. Under this arrangement, Evergreen is only entitled to receive an equivalent number of Evergreen shares, not precisely the same shares that were delivered to LBIE as borrower. This contractual right to delivery of equivalent shares is distinct from a claim to particular shares (by individual stock certificate number, for example) and does not establish "legal ownership or an immediate superior right of possession to specifically identifiable property." Thus, the SLA does not support a conversion claim, and Count III of the Amended Complaint fails to state a claim upon which relief may be granted.

*Declaratory Judgment (Count I)*

Count I of the Amended Complaint, seeking a declaratory judgment determining title to the Evergreen shares essentially is duplicative of the relief requested by Evergreen under Count III of the Amended Complaint – *i.e.*, it seeks "the return of the Evergreen Shares." *See* Am. Compl. ¶¶ 37-40, 53. Therefore, the discussion regarding the Loaned Shares in the immediately preceding section also applies to Count I. Relief may not be

15

granted because the SLA recognizes that the shares are fungible and does not require a return of the identical shares of stock that were loaned in the first place. *See Canofi Master LDC v. College P'ship, Inc.*, 452 F. Supp. 2d 462, 480-81 (S.D.N.Y. 2006) (citations omitted) (granting motions to dismiss claim for declaratory judgment that was "duplicative of the adjudication of [defendant - counterclaimant's] breach of contract claim" and would not "serve a useful purpose in clarifying and settling the legal relations in issue" or "afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding").

### *Breach of Contract (Count II)*

In Count II of the Amended Complaint, Evergreen contends that LBI and LBHI have breached the SLA and the Guaranty. Am. Compl. ¶¶ 43-44. This Count alleges that Evergreen has suffered and will continue to suffer damages as a result of the alleged breaches and seeks a judgment against LBI and LBHI for monetary damages in an amount to be determined. Am. Compl. ¶¶ 45-46. In response, LBI counters that Evergreen is making a claim against a debtor based on a pre-petition contract that, like all other such claims, should be asserted in accordance with the claims allowance process, and not by means of an adversary proceeding. Br. Opp'n at 4-5. The Court agrees with this response.

Federal Rule of Bankruptcy Procedure 7001 enumerates nine categories of controversies that may be brought as adversary proceedings. Fed. R. Bankr. P. 7001. "The list [of categories set forth in Rule 7001] does not include a category for the recovery of claims against [a] debtor." *Dade County Sch. Dist. v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 53 Bankr. 346, 352-55 (Bankr. S.D.N.Y. 1985). *See also*,

16

*In re The Drexel Burnham Lambert Group, Inc.*, 148 B.R. 993, 998 (S.D.N.Y. 1992) (finding that, based upon the provisions of Federal Rule of Bankruptcy Procedure 7001, a claim for damages resulting from the breach of a letter agreement could not have been brought in a prior adversary proceeding and could properly be brought only through the proof of claim process).

Because a damage claim due to an alleged prepetition breach of contract is not a proper subject for an adversary proceeding, the Court finds that Count II of the Amended Complaint fails to state a claim upon which relief may be granted. Assuming that Evergreen has filed a timely proof of claim, dismissal will not prejudice its rights with respect to any provable damages arising on account of the alleged breach.

### *Permanent Injunctive Relief (Count IV)*

Evergreen seeks a permanent injunction directing Barclays to deliver the shares of Evergreen common stock that currently are in its possession and any related proceeds based on the proposition that the failure and refusal of the Defendants to deliver these shares "is causing irreparable damage to Evergreen." Am. Compl. ¶ 57. In response, Defendants maintain that this request for relief is inappropriate and duplicative and that Evergreen cannot demonstrate either success on the merits or irreparable harm, both of which are essential factors under the relevant case law. These defenses are consistent with the Court's denial of Evergreen's motion for a preliminary injunction on November 5, 2008. The Court denied this motion filed at the outset of the litigation due to the protection afforded to Barclays under the Sale Order, the speculative nature of Evergreen's claims and the failure to show any irreparable harm resulting from the sale of the Loaned Shares to Barclays. The same reasoning supports dismissal of Count IV.

"The standard for the issuance of a permanent injunction is essentially the same as that for a preliminary injunction except that for the former, plaintiff must prove actual success on the merits *and* irreparable harm." *Wojnarowicz v. American Family Ass'n*, 745 F. Supp. 130, 145 n.13 (S.D.N.Y. 1990) (emphasis added). Given the analysis of the SLA and the Court's decision in the 60(b) Litigation confirming the finality of the Sale Order, Evergreen can offer no facts demonstrating that it is entitled to a permanent injunction. For that reason, it cannot plausibly satisfy the injunction standard of being able to prove success on the merits and irreparable harm, and dismissal of Count IV is appropriate.

### *Relief from Stay (Count V)*

In Count V of the Amended Complaint, Evergreen asserts that the relief it seeks is not subject to the automatic stay. Am. Compl. ¶ 59. Evergreen states that it is seeking stay relief out of an abundance of caution to the extent necessary to pursue the relief requested in the Amended Complaint and to obtain possession of the any shares of its common stock in the possession of any Defendant. Am. Comp. ¶¶ 60, 61. However, it has not used the correct procedural means to obtain any such needed relief.

As noted in the Court's analysis of Count II of the Amended Complaint, the nine categories of controversies that may be brought as adversary proceedings are listed in Federal Rule of Bankruptcy Procedure 7001. Fed. R. Bankr. P. 7001. These enumerated categories do not include relief from the automatic stay, and it is improper to seek such relief in an adversary proceeding. *Id.*

The granting of relief from the automatic stay is governed by Section 362(d) of the Bankruptcy Code, and occurs "on request of a party in interest and after notice and a

18

hearing." The bankruptcy court, in granting such a request shall "grant relief from the stay … such as by terminating, annulling, modifying, or conditioning such stay … ." 11 U.S.C. § 362(d). Furthermore, Rule 4001(a)(1) of the Federal Rules of Bankruptcy Procedure specifies that any request for relief from stay is to be brought by motion that commences a contested matter. Fed. R. Bankr. P. 4001(a)(1).

Without regard to whether Evergreen may have needed to seek relief from the automatic stay to pursue its claims, Evergreen clearly did not follow the proper procedure. Moreover, in light of the conclusions reached in this memorandum decision, relief from the automatic stay, to the extent it was ever required, is not needed now due to the dismissal of the Amended Complaint in its entirety.

### *Constructive Trust (Count VI)*

Evergreen's constructive trust theory does not withstand scrutiny due to the complete absence of any confidential or fiduciary relationship with Barclays. Under New York law, a party seeking to impose a constructive trust must show "(1) a confidential or fiduciary relationship; (2) a promise, express or implied; (3) a transfer of the subject *res* made in reliance on that promise; and (4) unjust enrichment." *Ades & Berg Group Investors v. Breeden (In re Ades & Berg Group Investors)*, 550 F.3d 240, 245 (2d Cir. 2008). Evergreen is unable to show all four of these required elements.

In Count VI, Evergreen refers to Barclays only once, claiming that "[n]one of the [d]efendants owns the [Loaned Shares] or any related proceeds currently in the possession of [Barclays] and instead hold such [Loaned Shares] in trust for Evergreen." Am. Compl. ¶ 63. This Count at most appears to be pleading the element of unjust enrichment only. Even if Evergreen had attempted to properly plead all four elements of

19

a constructive trust, it necessarily would fail due to the inability to plausibly show the existence of any confidential or fiduciary relationship between Evergreen and Barclays.

With respect to LBHI, Evergreen fails to plead in its Amended Complaint that (i) LBHI and Evergreen had a confidential or fiduciary relationship, that (ii) Evergreen relied upon the Guaranty in connection with the transfer of its shares under the SLA, or that (iii) LBHI was unjustly enriched. In the case of LBI, Evergreen affirmatively pleads that LBI is not in possession of the Loaned Shares, making a claim for unjust enrichment impossible.

Given Evergreen's failure to establish any of the first three elements of a constructive trust with respect to any of the Defendants, Count VI of the Amended Complaint is deficient and fails to state a claim upon which relief may be granted.

## *Conclusion*

For the reasons stated, the Motions to Dismiss the Amended Complaint are granted, and the Defendants are directed to promptly submit an appropriate order consistent with this decision.

IT IS SO ORDERED.


Dated: New York, New York
       February 22, 2011

                                             *s/ James M. Peck*
                                        Honorable James M. Peck
                                        United States Bankruptcy Judge